IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JAVIER GOMEZ, ALFREDO HUERTA, <br> DANIEL BOBADILLA, <br> URIEL RODRIGUEZ, DANIEL MERINO, <br><br> individually and on behalf of other <br> similarly situated employees and former <br> employees of Defendants, <br>        Plaintiff(s), <br><br> vs. <br><br><br> MI COCINA LTD, all individually and <br> d/b/a MI COCINA, TACO FANATICO, <br> and M CROWD RESTAURANT GROUP, <br> M CROWD GP, LLC, and <br> M CROWD RESTAURANT GROUP, <br> INC., d/b/a MI COCINA, TACO DINER, <br> THE MERCURY, MI COCINA LLC, and The <br> MERCURY GRILL, LTD <br><br>        Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> §CIVIL ACTION NO: 3:14-cv-2934 L <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO AND MOTION TO STRIKE PLAINTIFFS' APPENDICES FILED WITH THEIR RESPONSE TO DEFENDANTS' MOTION FOR DECERTIFICATION**

TO THE HONORABLE UNITED STATES JUDGE:

Plaintiffs, Javier Gomez ("Gomez"), Alfredo Huerta ("Huerta"), Daniel Bobadilla ("Bobadilla"), Uriel Rodriguez ("Rodriguez"), and Daniel Merino, ("Merino"), file this *Plaintiffs' Response to Defendants' Objections to and Motion to Strike Plaintiffs Appendices Filed with their Response to Defendants' Motion for Decertification* and would show the following:

1

## I. INTRODUCTION AND SUMMARY

Plaintiffs find it extremely sad that the arguments have stooped to such a <u>low</u> level, and that there are over 600 docket entries, largely based on irrelevant disputes. Plaintiffs have never had to respond to such trivial arguments throughout their years of practice. Plaintiffs' counsel may not be perfect, but they have worked tirelessly over the course of two and half years to provide **<u>justice</u>** for the Plaintiffs. Although Defendants have made countless mistakes themselves in past briefings, Plaintiffs never brought <u>such petty issues</u> to the Court, and thus, the Court has never admonished them. However, since Defendants continue to hypocritically point out the speck in Plaintiffs' eye, while simultaneously failing to take the plank out of their own, Plaintiffs brings the issues before the Court now.

Defendants failed to confer properly with Plaintiffs regarding their motion to strike pursuant to the local rules. Had they, Plaintiffs would have simply withdrawn Exhibits A1-A3 since the information is already properly cited under Plaintiffs' counsel's declaration and footnotes in Plaintiffs' response brief. Plaintiffs presented evidence of violations for **97 out 100 sets** of discovery, and Defendants' best response is that Plaintiffs failed to provide appendix numbers on three charts. Plaintiffs find it necessary to direct the Court's attention to Defendants' own blatant violation of the Court's orders, as well as the local and federal rules. Plaintiffs are saddened to do so because the complaints are trivial and petty, but Plaintiffs provide the following:

1. **FAILURE TO PROVIDE SELF-CONTAINED APPENDIX FOR DKT. 611-1.** Defendants violated L.R. 7(i)(1)-(2). Defendants were required under the local rules to provide any documents or exhibits in support of their motion under a separate appendix and attach the exhibit under Dkt. 611-1. Local Rule 7(i)(2) specifically provides the "the appendix must be assembled as a self-contained document separate from the motion, response, reply, and brief.

2. **FAILURE TO FOLLOW PAGE LIMITS**: Exhibit 1 under Dkt. 611-1 is also a violation of the page limit requirements under L.R. 7.2 (c), given the fact that chart contains actual

**arguments and objections** to declarations, rather than a synthesis of information. The objections should have been contained within Defendants' brief. Defendants failed to obtain leave of court to present arguments outside the page limits prescribed by the local rules in in violation of L.R. 7.2(c). Defendants' attempt to provide a separate chart of arguments under L.R. 7.2 (c) was simply a way to circumvent the page limits provided under the local rules.

3. **CERTIFICATE OF CONFERENCE**: Defendants failed to provide a certificate of conference concerning their Motion to Decertify Collective Action. While it can obviously be assumed that the motion will be opposed, L.R. 7.1 (h), Uniform Requirements on Motion Practice provides, that if "**a motion is not listed, a brief and certificate of conference are required**." A Motion for Decertification is not listed as a brief not requiring a certificate of conference, and thus should have included one. Defendants either chose not to follow it or inadvertently failed to do so. Either way, Defendants violated L.R. 7.1 (h).

4. **FAILURE TO CONFER ON ALL PARTS OF MOTION TO STRIKE**: Defendants failed to confer with Plaintiffs on all parts of Defendants Motion to Strike in violation of L.R. 7.1, including which specific exhibits did not contain appendix numbers, and Plaintiffs "incorporation by reference. Dkt. 616-1, App. 00001-2, ¶ 3.

5. **FAILURE TO PRODUCE RECORDS**: In addition to the poster they failed to produce under Dkt. 579-1, App. 0048, the Court will find Defendants also offered and utilized time records as evidence that bear no proof of production under Dkt.579-1, App. 0036-47; 0070-0186; 0064-65. Plaintiffs could have easily asked the Court to strike the records pursuant to FRCP 37 and FRCP 26, but chose not to do so because Plaintiffs' counsel believed it was an honest mistake.

6. **SEALING OF DOCUMENTS**: Defendants argued to the Court that various "confidential documents" were not properly sealed, but Defendants failed to seal the exact same document complained of under Dkt. 579-1, App. 0036-0047 marked "confidential" pursuant to protective order under Dkt. 163. Defendants' claim leaving the documents unsealed was a violation of protective order and "detrimental" to their clients. Defendants will obviously say and do anything to for dismissal, but not apply the same rules or standards for themselves to "protect" their client.

7. **VIOLATED ORDER ON REPRESENTATIVE CLASS**: Defendants utilized individuals not part of the representative class to support their initial motion in violation of Judge Solis order under Dkt. 148.[1] Defendants were given 100% discretion to choose their representative class Plaintiffs, but those detailed under Fn. 1 were not part of the representative class. Dkt. 616-1, App. 000001-2, ¶ 2. (Declaration of Caroline Ibironke).

The point is that Defendants are not exempt from making errors. While Plaintiffs could have raised issue with all of the minor and technical issues detailed under Defendants' brief,

---

[1] Defendants cannot dispute that <u>Cesar Hernandez, Israel Galvan, Joseph Daniels, Brandon Alvarez, Keith Espinosa, Jesus Gomez, Adam Morales, Jose Morales, Marguerite Orocio, Maria Llamas</u> were not included as part of the representative class and discovery was not conducted on these Plaintiffs. Dkt. 616-1, App. 000002, ¶ 2. Declaration of Caroline Ibironke

along with other motions during the course of this case, they chose not to because the errors have no substantive effect on the merits of this case.

### II. ARGUMENTS AND AUTHORITIES
#### A. APPENDIX NUMBERS ON EXHIBITS A1-A4

Defendants' argument concerning **Exhibit A-4** is irrelevant. While referenced, Plaintiffs' decided to omit Exhibit A-4 from their filing. A review of ECF filing system demonstrates that the exhibit is not included as a docket entry, was not provided in the judge's copy of exhibits, and was not filed in support of anything. Accordingly, there is no A-4 to strike.

Moreover, the charts under **Exhibits A1-A3** were not provided "in support of" anything, but rather used to synthesize the information already contained under Plaintiffs' counsel's declaration and various footnotes for easier reading by the Court and defense counsel.[2] If Defendants had complied with the local rules and fully conferred as detailed under fn.3,[3] Plaintiffs would have been willing to withdraw the demonstrative charts under Exhibits A1-A3.

For example, Exhibit A-1 is a list of discovery obtained to date, which is also provided under Plaintiffs counsel's declaration under Dkt. 604-1, Exhibit A, App. 000001-2, ¶ 3.[4] Exhibit A-2 is a list of employees whose personnel files demonstrate that they did not receive handbook

---

[2] Despite Defendants hyperbole, Plaintiffs had previously provided appendix numbers for all attached Exhibits A-PPP that are in support of Plaintiffs' response, and did not want to go back and re appendix over 1400 pages of evidence for three additional charts Plaintiffs believed would assist the Court in its review of the information.

[3] On February 1, 2017, Defense counsel contacted Plaintiffs' counsel concerning their motion to strike and indicated that they intended to strike Plaintiffs appendix for failure to provide app numbers on particular exhibits. Defendants failed to fully confer with Plaintiffs concerning contents of their motion. When pressed on which exhibits do not contain appendix numbers, Defendants refused to provide a clear answer to allow for proper conference, even though Plaintiffs' counsel indicated they were in Denton for a Court hearing. Dkt. 616-1, App. 000002 ¶ 3. Plaintiffs learned from Defendants' filing on the drive back from Denton, that the documents they were moving to strike are lack of appendix numbers and the charts of information under Exhibits A1-A3. *Id.*; See also Dkt. 616-1, App. 000003-4 (correspondence on conference concerning Motion to strike).

[4] Defendants do not and <u>cannot</u> dispute that they propounded 76 sets of discovery, and conducted 24 depositions in this case to date, meaning that they have received 100 separate sets of discovery for a class of 301 Plaintiffs. Dkt. 604-1, App. 0001-0002.

acknowledgments, which is already detailed under Plaintiffs counsels' declaration under Dkt. 604-1, App. 000002, ¶ 7-8.[5] If the Court deems it necessary, Plaintiffs' counsels are willing to withdraw Exhibit A1-A2 to avoid irrelevant arguments.   Finally, Exhibit A-3 is a synthesis of the deposition testimony provided for employees that contend they worked off the clock.  The chart recites information already provided in alphabetical order by last name under **Fn. 116 for pre-shift off the clock work, Fn. 120 for post shift off the clock work, and Fn. 127 for overtime discouragement**.[6]  There are **thousands** of pages of deposition testimony in this case. Plaintiffs' counsel knew that rummaging through the information would prove to be a tedious task for the Court and defense counsel, and sincerely wanted to attempt to synthesize the information.  Plaintiffs can simply supplement the chart with appendix numbers if that is necessary.  Alternatively, if deemed necessary by the Court, Plaintiffs are willing to withdraw Exhibit A-3 to quickly resolve this dispute and have the Court look at the merits of this case.[7]

## B.  ADMISSIBILITY OF CHARTS CONTAINING APPENDIX NUMBERS

Defendants contend that Plaintiffs have submitted charts that are nothing more than "opinions and conclusions" 604-25, Dkt. 604-30, Dkt. 605-14, 605-16.  However, a review of Defendants' reply brief demonstrates that they were not able to refute the information contained in those charts.  The exact information contained in the chart is already filed as evidence, for

---

[5] Clearly, Plaintiffs could not attach thousands of pages of personnel files for these employees. Defendants don't deny that the personnel files of these employees fail to contain employee handbook acknowledgments.

[6] The citations from the Plaintiffs are provided in alphabetical order according to last name, but every citation can be found under Ex. A-3.  For example, Maria Rodriguez testimony is found under Fn. 116, under Exhibit GGG, and matches her testimony excerpts in Exhibit A-3.

[7] Finally, Defendants complain about lack of appendix numbers on a chart under Exhibit OOO.  The information contained under Exhibit OOO is already provided by payroll roll evidence under at Dkt. 605-15, Exhibit PPP, App. 1247-1415.   Plaintiff will withdraw Exhibit OOO if the court deems it necessary. Plaintiffs believe that the court can perform simple math to see that the plaintiffs referenced under chart did not make minimum wage from the face of the pay roll records, based on a simple review of the Defendants payroll at Dkt. 605-15.

5

which Defendants do not object.[8]  **<u>Please review Fn. 8 for corresponding evidence</u>**. The charts are simply a demonstrative of the evidence that would be admissible at trial, so that the Court can simply compare the chart to <u>time and edit records produced by Defendants</u>. *United States v. Ogba*, 526 F.3d 214, 225 (5th Cir. 2008) (holding that the summary chart could be admitted since it accurately reflected the records and evidence disclosed in books, records, and other documents).  The evidence upon which the charts are based are already part of the record, but even if they were not, Plaintiffs could still use the charts to explain the underlying records and facts given the complexity of this case and the magnitude of information pursuant to Rule 1006. See *United States v. Tsoa*, 2013 U.S. Dist. LEXIS 165895, *11 (E.D. Va. Nov. 20, 2013).  Given the magnitude of information produced in this case making the case complex, the summaries of charts were provided to help the Court synthesize voluminous documents.  In *Tsoa*, the court admitted a summary exhibit under Rule 1006 of underlying records totaling less than 100 pages, noting that "while the volume of material is not overwhelming, the evidence is certainly complex." *Id*. Notwithstanding, Defendants never provide an explanation to the Court as to why whole shifts worked have been deleted from the named Plaintiffs time based on the their original clock in /out receipts, edit/time records, nor do they dispute whole deleted shifts for other Plaintiffs detailed across their 20 something locations.  Defendants also fail to provide any contrasting evidence based on time records that Plaintiffs <u>were not</u> working in excess of 20% of

---

[8] Dkt. 604-25 is a summary chart of time deletions corresponding to time and edit records at Dkt. 604-26, Exhibit V, App. 00153-196. Clear time deletions can be seen directly from the records themselves. Dkt. 604-30 is a summary chart of excessive side work based on Defendants' time records under Dkt. 604-31, App.00252-262, produced by Defendants in this case, and for which Defendants don't provide an objection. Dkt. 605-14 is a summary of minimum wage violations based on payroll records filed under Dkt. 605-15, for which Defendants do not provide an objection.  Dkt. 605-16 in a summary of chart of the actual pay rates of Plaintiffs provided under each Plaintiffs payroll as detailed under the chart and already filed with the Court.  Defendants' attempt to negate the pay rates listed under their own payroll records is ridiculous.

6

their shift performing side work.[9]   The irony is that Defendants provided the exact same type of chart as Dkt. 605-16 under their Motion to Strike at Dkt. 611-1, which is **79 pages in length**.

### C. <u>DECLARATIONS ARE ADMISSIBLE EVIDENCE</u>

Defendants contend Plaintiffs' declarations should be struck because they are "vague conclusory, argumentative, and not based on personal knowledge".  In support, Defendants have attached a 79-page chart of objections and arguments.  First, the chart was filed in violation of L.R. 7(i)(1)-(2), and L.R. 7 (c). Second, the arguments and objections are absurd, given the fact that the statements are corroborated by Defendants' own document production and sworn statements through their COO and IT Director. Dkt. 611, at 9, Dkt 579-1, App, 0001-0019 and Dkt. 604-13, App. 00042.  Specifically, Defendants have objected to each of Plaintiffs' statements as vague, speculative, lacking foundation, and conclusory, concerning where the Plaintiffs worked, how long, their base pay, the description of their job duties, their understanding of Defendants' tip pool, their experience of verbal instructions to work off the clock, their knowledge of the tip credit, and their experience of taking breaks.   However, globally, these objections are absolutely nonsensical, when Plaintiffs 1) provide the statements are based on their personal knowledge, 2) the statements are consistent with their sworn interrogatory responses which Defendants do not object to, 3) the statements can be verifiable by Defendants' own pay roll, time and attendance records and personnel files, and 4) the statements are affirmed by declarations from Defendants' COO and IT director.  Specifically, Defendants' arguments under their bullets and Dkt. 611-1 are meritless for the following reasons.

1. **First**, Defendants admit and it is undisputed that all class Plaintiffs are paid a base pay plus tips. Defendants further admit that they are required to participate in tip pool mandated. Dkt. No. 114-1, APP003-006, McAfee Dec ¶ 12,16, 21, 26; Dkt. No. 480-1, APP 008-9, McAfee Dec. ¶ 13, 15,

---

[9] Mark Price avers that Aloha automatically clock employees out after 3 am, so we know that if a manager goes in and deletes the Plaintiffs time one or two days later, then we know the employee could not have forgotten to clock out because the Aloha system would have automatically clocked them out by 3:00 a.m. Dkt. 604-13, App. 00042, Declaration of Mark Price, ¶ 14.

16-18; Dkt. No. 591-1, APP 008-0010, McAfee Dec. ¶ 17,19, 22; Dkt. No. 579-(5-7), APP 0499-2353, Tab 5, Pay

2. **Second,** Plaintiffs provide their declarations are based on personal knowledge and they were directed and witnessed employees working off the clock. Fed. R. Evid. 602; All Plaintiffs provided that their declarations are based on their personal knowledge of their day to day assignment and discussion with other tipped employees. The declarations are further corroborated by Defendants' own document production. *Black v. Settlepou, P.C.,* No. 3:10-cv-1418-K, 2011 WL 609884, at *3 (N.D. Tex. Feb. 14, 2011)(holding that Plaintiff's declaration provided that they had personal knowledge of facts alleged, and thus, provided "substantial allegations such that they meet the low threshold" for collective actions); *Perez v. Alcoa Fujikura, Ltd.,* 969 F.Supp. 991, 998 (W.D.Tex.1997) (noting that declaration containing statement that it was based on personal knowledge constituted "sufficient indicia of personal knowledge" to overcome evidentiary objections). Personal knowledge may be demonstrated based on the position held by the employee. Furthermore, the Fifth Circuit has noted that a declarant may satisfy the personal knowledge requirement based on his position as a corporate employee. [10]

3. **Third**, Defendants' own Director of Information Technology *avers that "only managers are authorized to adjust the clock-out time to accurately reflect the time that the employee completed their shift."* Dkt. 604-13, App. 00042, Declaration of Mark Price, ¶ 14. Thus, Price's sworn statement is consistent with Plaintiffs allegations that only "managers have the ability to edit or delete time in the Aloha system as provided under their declarations.

4. **Fourth**, Plaintiffs' statement concerning following the same rules, codes of conduct, and training materials are specifically corroborated by Defendants' own job descriptions (Dkt. 604-10, Exhibit G, App. 000020-33), evaluations (Dkt. 604-12, Exhibit H, App. 00036-39), handbook policies (Dkt. 579-1, App. 49-64). The documents on their face establish that Plaintiffs are trained based on the same materials, job descriptions, subject to same structure, and discipline policy. Defendants produced these documents, not Plaintiffs. The documents clearly corroborate Plaintiffs' declarations, and the statements. The documents are clearly based on Plaintiffs' personal knowledge and Defendants' own document production.

5. **Fifth**, direct evidence on its face establishes Defendants failed to inform their employees of the tip credit. Defendant failed to produce any legible English and Spanish poster concerning informing their employees of the tip credit prior to decertification, and the poster they did improperly attach as evidence is insufficient to meet their burden. Plaintiffs worked at Defendants' various restaurant locations for months to several years, and were well aquatinted

---

[10]*See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.,* 671 F.3d 512, 516 (5th Cir.2012) (citing *DIRECTV, Inc. v. Budden,* 420 F.3d 521, 530 (5th Cir.2005)) ("Personal knowledge may be demonstrated by showing that the facts stated `reasonably' fall within the `sphere of responsibility' of the affiant as a corporate employee."); *see also Villarreal v. St. Luke's Episcopal Hosp.,* 751 F.Supp.2d 902, 912 (S.D.Tex.2010) ("By virtue of his position, [declarant] has properly stated a basis upon which he may have gained personal knowledge of the organization by way of his day-to-day work and interaction with other employees...."); *Tesco Corp. v. Weatherford Int'l, Inc.,* 722 F.Supp.2d 755, 770 n. 8 (S.D.Tex.2010) ("[T]he Court is willing to infer, from [declarant's] position, that he had personal knowledge...."); *Perez,* 969 F.Supp. at 998 ("[Declarant's] position as accounting manager ... would have put him in a position to have direct personal knowledge of these statements....").

with the day to day customs, policies, and practices at those locations, and thus are entitled to provide their own <u>personal knowledge</u> as to whether they were informed of the tip credit, provided any document, or personally saw any posters at the restaurant. *Black v*, 2011 WL 609884, at *3; *Perez,* 969 F.Supp. at 998.

6. **Finally,** Defendants' own job descriptions provide that they are required to interchangeably perform the jobs of one another. Dkt. 604-10; Exh.G, APP 000017; 000024. As such, it begs the question as to how the statements can be conclusory when they are once again provided as directives under Defendants' own job descriptions and training materials. *Id*.

   1. <u>**CERTIFICATION IS NOT REQUIRED, ONLY TRANSLATION**</u>

Finally, Defendants complain that the declarations provided in English and Spanish do not contain certification. However, there is not a single rule under the local or federal rules that require a declaration translated in English and Spanish contain certification for a decertification motion. Plaintiffs properly provided declarations English and Spanish declarations for all Spanish speaking employees detailed. Defendants contend that they cannot tell if the translations are accurate, but have failed to provide any evidence, or objection alleging that the declarations <u>were not</u> <u>properly translated or are inaccurate</u>.

Regardless, Plaintiffs have attached a declaration from Luisa Saldamando, the certified interpreter used throughout the course of this case. Mrs. Saldamando confirms that she personally spoke to each of the six Spanish speaking employees referenced, including Elda Alcaron and Genero Lopez Diaz. Dkt. 616, App. 000005-6 ¶ 2-3. Mrs. Saldamando swears she confirmed the Plaintiffs understood the contents of their declaration, and translated the declarations from English to Spanish. *Id*. Defendants' specific contentions concerning Elda Alcaron and Genero Lopez Diaz are irrelevant given the fact they were required to sign by electronic signature. They system requires them to read through the document before allowing them to sign and provides an audit trail to ensure that each document is read. Moreover, Alarcon provided executed interrogatory responses in Spanish concerning a majority of the contents of her declaration, which can be found under Dkt. No. 579-3, APP 0214-0222 of Defendants'

9

exhibits.  Just because they accidently signed the English version, and failed to sign the Spanish version through the electronic signature system with the other six Spanish declarants does not make their contentions void, when Mrs. Saldamando, avers she personally spoke to the Alcaron and Diaz to confirm that they agreed with the content of their Spanish declarations.[11]

Moreover, Defendants' reliance on *Cruz v. Aramark Servs.*, Inc., 213 F.App'x 329, 332 (5th Cir. 2007) is completely irrelevant and inapplicable to this case. In *Cruz*, the sworn affidavit was in English, and a ***Spanish version of the document was not provided any time***. The district court therefore rejected the English affidavit and gave the plaintiff an additional seven days to provide a Spanish version of the affidavit.  Plaintiffs did not respond within seven days, the Court struck the affidavit for failure to supplement, and respond, and the Plaintiff then filed an appeal. *United States v. Martinez-Gaytan*, 213 F.3d 890, 893 (5th Cir. 2000) is irrelevant to the case at issue.  In *Martinez-Gaytan*, Appellant was arrested at U.S. border for marijuana possession, and was subsequently interrogated by an English-speaking border agent.  The border agent asked an agent inspector who happened to speak Spanish to assist him with translation, and draft a "synopsis" of the appellant's response to the interrogation.  However, the appellant refused to sign.  At a pre-trial suppression hearing, agents did not call the original Spanish speaking, there was no sworn statement provided to know whether the answers provided were hose given by the appellant. The case does not deal with "certified" translation, and no sworn statement was obtained in either English or Spanish.[12]

---

[11] Moreover, Maria Alcaraz declares she speaks and writes in English. Dkt. 606-8, App.000367 ¶2. It is undisputed Alcaraz provided interrogatories and verified her interrogatories in English. Dkt. 441-5, App. 189-194.   The fact that Alcaraz wanted an interpreter to ensure nothing was lost in translation given the magnitude of this case does not negate her sworn testimony.

[12] **INCORPORATION BY REFERENCE**: Defendants' arguments concerning incorporation of arguments by reference is essentially moot based on the court's order under Dkt.  614. However, Plaintiffs contend they were

### III. CROSS MOTION TO STRIKE AND OBJECTION TO ADMISSIBILTY OF DEFENDANTS EVIDENCE CHART UNDER DKT. 611-1

Defendants have provided a chart under Dkt. 611-1, which is in essence the same type of chart that they are asking the Court to strike under Plaintiffs charts. The difference between the two is that Defendants chart is providing specific arguments and objections that extend well beyond the page limits provided by the local rules. The chart is 79 pages worth of objections and arguments of evidence that should have been **contained in their brief**. Defendants attempt to circumvent the local rules through their 79 page chart under Dkt. 611-1 is completely improper. Defendants could have asked for leave of Court for a page extension if they felt they needed to make arguments and objections to the declarations that exceeded the local rules page limit requirements, but they failed to do that. Moreover, as detailed above the declarations are not vague and conclusory. Plaintiffs have provided global objections to Defendants' 79 page objection chart since the information contained in the declarations were structured similarly by paragraph, although the contents varied for each Plaintiff depending on the subject. Plaintiffs are not going to respond with a 79 page line by line objection in response that would also violate the rules page limit restrictions of the local rules.

If the Court declines to strike, then Plaintiffs ask for leave to provide a separate response to the chart under Dkt. 611-1 so Plaintiffs will not violate any rules.

                                          Respectfully submitted,

                                          **AI LEGAL GROUP, PLLC**

                                          **/S/ CAROLINE IBIRONKE**
                                          _____

---

within their right to cross reference prior exhibits under their summary judgment motion based on Fed. R. Civ. P 10 (c).

        CAROLINE A. IBIRONKE
        TBA #24049814
        Caroline A. Ibironke
        Rhoda Appiah Boateng
        TBA #24050803
        6060 North Central Expressway STE 560
        Dallas, Texas 75206
        Tel.:    866-496-5015
        Fax:    866-496-5041
        e-mail: caroline@ailegalgroup.com
        e-mail: Rhoda@ailegalgroup.com

        **ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

      I hereby certify that service of the foregoing document will be accomplished through the notice of electronic filing in accordance with the Federal Rules of Civil Procedure on this the 27th day of February 2017, to the following:

Ann Marie Painter
State Bar No. 00784715
ampainter@perkinscoie.com
Jason R. Elliott
State Bar No. 24050558
jelliott@perkinscoie.com
Perkins Coie, LLP
500 N. Akard St., Suite 3300,
Dallas, TX  75201
PH: 214-965-7715
FX: 214-965-7765

        **/S/ CAROLINE A. IBIRONKE**
        _____
        CAROLINE A. IBIRONKE