**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JAVIER GOMEZ, et al.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:14-CV-2934-L** |
| | § | |
| **MI COCINA LTD., et al.,** | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are: Defendants' Motion for Decertification of Conditionally Certified Collective Action, filed November 18, 2016 (Doc. 578); Plaintiffs' Motion to Strike Evidence from Defendants' Motion for Decertification of Conditionally Certified Collective Action, filed January 19, 2017 (Doc. 596); Defendants' Objections to and Motion to Strike Plaintiffs' Appendices filed with their Response to Defendants' Motion for Decertification, filed February 15, 2017 (Doc. 611); and Plaintiffs' Cross-Motion to Strike and Objection to Admissibility of Defendants' Evidence Chart Under Dkt. 611-1, filed February 27, 2017 (Doc. 615). Having considered the motions, responses, replies, pleadings, record, evidence, and applicable law, the court **grants** Defendants' Motion for Decertification of Conditionally Certified Collective Action (Doc. 578), and **denies as moot** all remaining motions.

**I.     Factual Background and Procedural History**

This is a collective action alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Plaintiffs are Javier Gomez, Alfredo Huerta, Daniel Bobadilla, Ubriel

Rodriguez, and Daniel Merino ("Plaintiffs"), each of whom resides in Dallas, Texas, and is a tipped waiter earning $2.13 per hour plus tips at a Mi Cocina restaurant in Dallas. On behalf of themselves and all similarly situated employees, Plaintiffs filed this action on August 15, 2014, alleging violations of the FLSA's minimum wage and overtime provisions by Defendants Mi Cocina Ltd.; M Crowd GP, LLC; M Crowd Restaurant Group, Inc.; Mi Cocina, LLC; and Mercury Grill, Ltd. ("Defendants" or "Mi Cocina"). The live pleading is Plaintiffs' Third Amended Complaint, filed July 30, 2015 (Doc. 169).

Plaintiffs, on behalf of themselves and others similarly situated, contend that Defendants (1) did not pay them for all hours worked; (2) did not pay them overtime pay for hours worked in excess of forty hours per week; (3) required them to work during their breaks; (4) required them and other tipped employees to work off the clock or for $2.13 per hour "to do deep cleaning outside of their normal responsibilities;" (5) deducted cash from earned tips to cover nonpaying customers, broken items, or register shortages; (6) required "waiters/waitresses, bus boys, hostesses, and bartenders to participate in a tip pool;"(7) withheld a percentage of credit card tips to cover transaction costs charged by credit card companies; (8) required waitresses and waiters to contribute 3% of their tips to a tip pool that was distributed to bartenders, bus staff, and hostesses; (9) required a portion of tips to be paid to management and other ineligible employees; and (10) failed to inform them that Defendants intended to take a "tip credit." Third Am. Compl. ¶¶ 17-25. Plaintiffs allege that these violations occurred at multiple locations, not just one of Defendants' restaurants. *See id.* ¶ 26.

This case was originally assigned to former Chief Judge Jorge A. Solis, who, on March 4, 2015, conditionally certified the class in this case as consisting of waiters and waitresses (including cocktail

servers), hostesses, bus staff, and bartenders who were employed at Defendants' restaurants between August 15, 2011, and March 4, 2015. *See* Order (Doc 123). After the court authorized notice to potential opt-in plaintiffs pursuant to 29 U.S.C. § 216(b), a total of 354 individuals have opted in to this collective action ("Opt-In Plaintiffs").[1]

The parties have conducted significant discovery. On November 5, 2015, the magistrate judge granted a request by Defendants to modify discovery limitations originally set by former Chief Judge Solis and allowed Defendants the opportunity to propound written discovery on twenty percent (20%) of the Opt-In Plaintiffs and take depositions of seven percent (7%) of the Opt-In Plaintiffs. *See* Order (Doc. 336). Defendants served uniform discovery requests, including requests for admission, on sixty-two (62) Opt-In Plaintiffs. Nineteen (19) of the Opt-In Plaintiffs served with written discovery provided timely answers, ten (10) never responded to any written discovery, and thirty-three (33) have served late answers. By operation of law, forty-three (43) of the sixty-two (62) Opt-In Plaintiffs were, therefore, deemed to have admitted all items in Defendants' requests for admission. *See* Fed. R. Civ. P. 36.

On April 19, 2016, almost three months after Defendants first notified Plaintiffs of the deemed admissions and requested that Plaintiffs respond as soon as possible if they were planning to seek withdrawal of the deemed admissions, Plaintiffs filed their Emergency Motion to Withdraw or Amend Deemed Admissions to Defendants' Request for Admissions and Extension of Time to Respond to Discovery (Doc. 440), seeking to withdraw deemed admissions of forty-three (43)

---

[1] On September 26, 2016, the court dismissed fifty (50) Opt-In Plaintiffs, finding that their claims were time-barred. *See* Order (Doc. 572). Further, Stipulations of Dismissal have been entered as to four Opt-In Plaintiffs. *See* Jt. Stip. of Dis. (Doc. 541). Accordingly, the total number of Opt-In Plaintiffs is 301.

individuals who had opted in as Plaintiffs to the conditional class but had failed to answer timely five separate sets of requests for admissions.

On April 27, 2016, the case was reassigned to this court. Pursuant to the 28 U.S.C. § 636(b)(1)(A), the court referred Plaintiffs' Emergency Motion to Withdraw or Amend Deemed Admissions to Defendants' Request for Admissions and Extension of Time to Respond to Discovery and related pleadings to the magistrate judge for hearing and determination. On May 18, 2016, the magistrate judge held a hearing on the motion, which she denied. *See* Hearing Transcript (Doc. 467-2); Order (Doc. 455). On June 2, 2016, Plaintiffs appealed the magistrate judge's ruling to this court. On February 24, 2017, following a *de novo* review, the court overruled Plaintiffs' objections and affirmed the magistrate judge's ruling. *See* Mem. Op. & Order (Doc. 613).

Defendants now ask the court to decertify the conditional class, arguing that the Opt-In Plaintiffs are not similarly situated, that "[i]ndividual fact findings and legal conclusions will inevitably dominate the case and make impossible a determination of any common facts or legal issues," and "Plaintiffs have not and cannot propose a trial plan that would be anything other than an unmanageable mess in order to unsort all of the divergent facts, claims, and defenses." Defs.' Mot. to Decertify 2.

## II.     Applicable Legal Standard

The FLSA requires employers to compensate their non-exempt hourly employees at overtime rates for time worked over the statutorily-defined maximum of forty hours per week, and to ensure that employees receive wages each week that are, on the average, equal to the minimum of $7.25 per hour worked. 29 U.S.C. § 207(a). If an employer does not provide that pay, the statute authorizes

**Memorandum Opinion and Order - Page 4**

an employee to bring suit against his or her employer not only on behalf of him or herself, but also on behalf of other "similarly situated" employees. Specifically, section 216(b) of the FLSA provides in pertinent part:

> An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The purpose of allowing this type of action is to "serve the interest of judicial economy and to aid in the vindication of plaintiffs' rights." *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (Robinson, J.) (citations omitted). Unlike class actions brought under Federal Rule of Civil Procedure 23 that require plaintiffs to "opt-out," classes under § 216(b) of the FLSA are opt-in classes, which requires an employee to "opt in" to the action by filing his or her consent to become a party. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008).

Although the Fifth Circuit has not adopted a specific standard to be used in determining the propriety of class certification under the FLSA, it has recognized the two-step approach used by many courts consisting of (1) the notice stage and (2) the certification stage. *See Sandoz,* 553 F.3d at 916 n.2; *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-16 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *see also Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 758 (N.D. Tex. 2013) (O'Connor, J.) (recognizing and applying two-stage test as prevailing test among federal courts); *Valcho v. Dallas Cnty. Hosp. Dist.*, 574 F. Supp. 2d 618, 621

(N.D. Tex 2008) (Fitzwater, C.J.) (noting that the Northern District of Texas federal courts apply the two-stage test "that prevails among federal courts.")

During the notice stage, the plaintiff must establish that there are other potential class members who are "similarly situated in their job requirements and pay provisions." *Marshall v. Eyemasters of Tex., Ltd.*, 272 F.R.D. 447, 449 (N.D. Tex. 2011) (internal quotations omitted). If a court determines that a plaintiff has satisfied this test, the court may, in its discretion, decide to conditionally certify the class and facilitate notice of the lawsuit to potential class members. *See Valcho*, 574 F. Supp. 2d at 621-22.

At stage two, the certification stage, the court determines whether the class should be maintained through trial. *Mooney*, 54 F.3d at 1214. This stage typically begins when the defendant moves to decertify the class after discovery is largely complete. *Id.* The collective action will proceed if the court finds that the potential class members are similarly situated, but the class will be decertified if discovery fails to identify adequately a pool of claimants that are similarly situated. *Id.*; *see also Proctor*, 250 F.R.D. at 280 ("At this second stage, the burden is on the Plaintiff to prove that the individual class members are similarly situated."). "Similarly situated" means that there is a "factual nexus [that] binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice." *Proctor*, 250 F.R.D. at 280.

Stage one of the two-stage standard is "fairly lenient" and "typically results" in conditional certification. *Mooney*, 54 F.3d at 1214; *see also Behnken v. Luminant Mining Co., LLC*, 997 F. Supp. 2d 511, 519 n.6 (N.D. Tex. 2014) (Fitzwater, J.) ("Numerous courts have emphasized that the

factual support necessary at this stage is modest, and that the standard to be applied by the district court is quite lenient.") (collecting cases).

By contrast to the "fairly lenient" standard for conditional certification, the standard for proceeding as a collective action at the second stage is "much more stringent." *Proctor*, 250 F.R.D. at 280. Evidence gathered during discovery informs the court's analysis. *Id.* "[T]he more material distinctions revealed by the evidence, the more likely the district court is to decertify the action." *Id.* at 281 (citation omitted).

In deciding to conditionally certify this action, Judge Solis applied part one of the two-part test. *See* Order (Doc 123). In determining whether to continue this matter as a collective action, or to decertify it, the undersigned will apply part two of the two-part test.

"Decertification is proper if the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Proctor*, 250 F.R.D. at 280 (internal quotation marks omitted). The court may consider: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendant] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations. *Portillo v. Permanent Workers*, L.L.C., 662 F. App'x 277, 281 (5th Cir. 2016) (quoting *Mooney*, 54 F.3d at 1213-14 n.7) (alterations in original). Further, if a court cannot "coherently manage the class in a manner that will not prejudice any party," decertification is proper. *Proctor*, 250 F.R.D. at 281 (citation omitted). Finally, upon decertification, "the opt-in plaintiffs are dismissed, and the original named plaintiffs may proceed to trial with their own claims only." *Id.* at 280 (citation omitted); *Sandoz,* 553 F.3d at 915 n.2.

**III.     Analysis**

In this action, the court finds no evidence of a single express decision, policy, or plan that is illegal and has the same impact on the entire class. The evidence shows that Defendants' policies are, on their face, lawful, and prohibit all "off-the-clock" work, and recognize that employees must be paid overtime compensation in accordance with applicable state and federal law. Defs.' App. 50, 52, 58.

Moreover, the Opt-In Plaintiffs present claims that are so factually disparate as to make this case unmanageable as a collective action. Many Opt-In Plaintiffs have admitted they never worked off-the-clock, that their payroll records were accurate, that they never took breaks, or that they were compensated for breaks taken on the clock. As Defendants correctly argue, there is little consistency with respect to Plaintiffs' contentions that they were required to perform "off-the-clock" work, as Plaintiffs vary on the frequency, quantity of time involved, reasons for the work, or supervisor's directives. Similarly, with respect to Plaintiffs' contentions that Defendants took a "tip-credit," these contentions are not susceptible to class-wide treatment because the class members do not have shared experiences. As to Plaintiffs' contention that they were deprived a minimum wage as a result of improper "deductions," this experience is not shared by all members of the class, and discovery has shown that very few Opt-In Plaintiffs even complained of having experienced these deductions. Further, Plaintiffs' contention that they were denied overtime is not a problem common to the entire class. Several Opt-In Plaintiffs admit to rarely working overtime, or state that they were properly paid for all overtime.

The court also notes that, through the deemed admission of forty-three of the Opt-In Plaintiffs, *see supra*, the following five material facts have been conclusively established, further rendering the case unmanageable as a collective action due to the striking dissimilarities in each Opt-In Plaintiff's experience:

1. The hours reflected on those plaintiffs' paystubs accurately reflect the total number of hours they have actually worked;

2. Those plaintiffs have not made a complaint to supervisor(s) or manager(s) about not being paid for time worked;

3. Those plaintiffs have not had any money withheld from their wages or tips for "dine and dash," breakage, or cash register shortages;

4. Those plaintiffs have not participated in a tip-sharing arrangement about which they have specific, personal knowledge of managers or other non-tipped employees receiving funds; and

5. No supervisor or manager has provided those plaintiffs with written or verbal instructions to perform work without being clocked in.

Defs.' App. 188-92.

Finally, management of this case and concerns surrounding procedural fairness convince the court that decertification is required. Plaintiffs have not provided the court with any *feasible* other ways to have a trial of a case with so many factual dissimilarities relating to the remaining Opt-In Plaintiffs, especially in light of the deemed admissions of forty-three of the Opt-In Plaintiffs. This case involves too many different types of employees—waiters and waitresses (including cocktail servers), hostesses, bus staff, and bartenders—working at too many different locations over a lengthy period of time, with dissimilar claims, issues and facts. The defenses that Defendants will likely offer at trial would be equally individualized and will vary with the factual dissimilarities among the

Opt-In Plaintiffs. Under these circumstances, the court concludes that decertification of the class is appropriate. Case management and procedural fairness require this result.

## IV. Conclusion

For the reasons herein stated, the court **grants** Defendants' Motion for Decertification of Conditionally Certified Collective Action (Doc. 578), and **denies as moot** all remaining motions (*see* Docs. 596, 611, and 615).[2] All Opt-In Plaintiffs are **dismissed** from this action **without prejudice** to each such Opt-In Plaintiff filing a suit on his or her behalf. To prevent prejudice that any Opt-In Plaintiff might incur should he or she decide to file an individual lawsuit, the court exercises its equitable power and hereby tolls the applicable statute of limitations for **forty-five (45) days** following entry of this order. The claims of Plaintiffs Javier Gomez, Alfredo Huerta, Daniel Bobadilla, Ubriel Rodriguez, and Daniel Merino remain for trial.

**It is so ordered** this 4th day of August, 2017.

Sam A. Lindsay
United States District Judge

---

[2] The remaining motions concern objections to evidence upon which the court has not needed to rely in deciding the current motion for decertification.